UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

*******

ANTHONY P. KEYTER,                    C04-5867(RJB)CCL

      Plaintiff,

                              <u>ORDER</u>

-v-

230 GOVERNMENT OFFICERS,

      Defendants.

*******

Before the Court in the above-captioned civil matter are four motions to dismiss filed by defense counsel, as joined by the Federal Defendants by stipulation of the parties, on behalf of 230 government officers. Also before the Court is Plaintiff's May 3, 2005, motion to disqualify the undersigned on the ground that I am "now a party to the case." The Court, having considered the briefs of the parties, the entire record, and the applicable law, is prepared to rule on all pending motions.

<u>PRIOR STATE & FEDERAL COURT LITIGATION</u>

Plaintiff Anthony P. Keyter ("Keyter") presents himself to this Court as a disgruntled litigant. He has already lost two state court cases and one federal court case (at both the district court and appellate court levels) arising out of the

same basic transaction, which was a marital dissolution action.
In the instant case, Keyter's second federal lawsuit, Keyter
makes his third attempt to recover property lost through his
first state court case.

The marital dissolution action was filed in state court in
the State of Washington by Maureen Keyter.  The presiding judge
in state court was Defendant Marywave Van Deren, who conducted a
non-jury trial and announced her decision on December 12, 2001.
Keyter was represented at trial by counsel.  Judge Van Deren
entered and filed Judgment and Decree of Dissolution on January
4, 2002.  A Notice of Appeal was filed on August 13, 2002.

Keyter tried to appeal the Superior Court's Judgment and
Decree of Dissolution to the Court of Appeals of the State of
Washington, Division II, which granted a motion to dismiss the
appeal on September 17, 2002.  Keyter might have requested
reconsideration by the Court of Appeals or sought review by the
Washington Supreme Court, but he did neither.

Instead, Keyter returned to Judge Van Deren and filed a
Motion for Relief from Judgment on January 29, 2003.  It is
unclear from the record whether that motion was denied, but the
docket sheet in the case indicates numerous filings by Keyter
following the issuance of the mandate by the Court of Appeals.

Keyter sent numerous letters and affidavits to the district court and filed a Motion for Default on November 29, 2004.  It appears that activity continues (by virtue of Keyter's continued filings) in that case, although it appears that Judge Lee is now presiding over the case.

Not content to seek relief solely within the state court system in the State of Washington, on December 3, 2003, Keyter filed a complaint in the U.S. District Court for the District of Columbia against President George W. Bush, complaining of President Bush's "reckless disregard of his statutory duties and violation of Section 3 of Article II of the United States Constitution; violation of 18 U.S.C. § 241; violation of 18 U.S.C. § 242; violation of 18 U.S.C. § 4; and for reckless disregard of his Common Law duties." *See Keyter v. Bush*, CV 03-2496 (EGS), Opinion and Order at 1, (Dist. Of Col. Aug. 6, 2004) (*quoting* Compl. at 1).  Keyter also complained that President Bush failed to respond either to Keyter's reports of collusion in the Washington state court system to illegally seize Keyter's assets and income or to his requests that the crimes of 195 officers of Washington State, and 2 others (*i.e.*, his ex-wife and her attorney), be investigated and prosecuted.  Keyter alleged that he had sent President Bush a 970 page Dossier of Crimes that

informed President Bush of the crimes occurring within the State of Washington and demanded that the President see to it that these crimes were prosecuted.  Keyter also sought in that suit to disqualify the U.S. Attorney on the ground of conflict of interest.

The Hon. Emmett G. Sullivan dismissed Keyter's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted because (1) there is no private right of action on the criminal statutes (*e.g.,* 18 U.S.C. § 241, 18 U.S.C. § 242, and 18 U.S.C. § 4); (2) absolute immunity protects the President from civil damages actions; and (3) sovereign immunity protects the President acting in his official capacity from civil damages actions.  The district court found Keyter's argument that the U.S. Attorney should be disqualified because of an alleged conflict of interest (between the Attorney General's duty to prosecute the President and his duty to defend the President) was "utterly without merit."  *Id.* at 7.

On September 22, 2004, Keyter appealed Judge Sullivan's decision to the Court of Appeals for the District of Columbia Circuit.  On February 16, 2005, granting the defendant's motion for summary affirmance, the D.C. Circuit panel issued a *per curiam* decision stating that the case had been properly dismissed

by the district court on the ground of President Bush's absolute immunity.  *See Keyter v. Bush*, 2005 WL 375623, at 1 (D.C. Cir. Feb. 16, 2005) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982), and *Nixon v. Fitzgerald*, 457 U.S. 731 (1972)).  The panel stated further that there is no private right of action available as to the criminal code.  *Id.* (*citing Rockefeller v. U.S. Court of Appeals for the Tenth Circuit*, 248 F. Supp. 2d 17, 20 (D. D.C. 2003).

Approximately three months after Judge Sullivan dismissed the federal case, Keyter decided to go back into state court; Keyter filed a civil action, on November 29, 2004 (the same day Keyter filed a Motion for Default in his dissolution case), against his ex-wife, in Pierce County Superior Court (No. 04-2-13977-1), seeking "damages suffered due to her criminal acts of burglary, perjury, fraud, and theft, which she perpetrated against [Keyter] during the proceedings for the dissolution of their marriage."  That suit was dismissed on December 17, 2004, and Superior Court Judge Armijo imposed $750 in costs against Keyter.

Meanwhile, on December 2, 2004, Keyter filed the instant Complaint in federal district court in the Western District of Washington.  Keyter now names 230 state and federal government

5

officials, including the Governor of the State of Washington and several cabinet members, the Chief Justice of the appellate court, the Washington Deputy Attorney General, the judge who decided Keyter's marriage dissolution action, a Pierce County Superior Court Judge, all of the members of the Washington State Committee on Judicial Conduct (including five state judges), all the Washington State Senators and State Representatives, both of the State Ethics Boards (Executive and Legislative), all of the elected government officials of Pierce County and the City of Tacoma, the top State Patrol officers, the top officers in the local sheriff's department and police departments, the Pierce County Prosecutors and the U.S. Department of Justice prosecutors in Seattle and in Washington, D.C., and the top Federal Bureau of Investigation officers in Seattle.

The gravaman of Keyter's complaint is that these 230 government officers have violated their obligation to stop a continuing series of crimes, to wit: crimes committed against Keyter by his ex-wife, her attorney, and by the presiding judge in his marriage dissolution action.  As damages, Keyter wants the assets and income that he lost in the property division of the marital estate.  This is essentially the same action Keyter filed against President Bush, with a different roster of defendants.

On January 5, 2005, after filing the instant complaint on
December 20, 2004, Keyter sent an *ex parte* letter to Judge Robert
Bryan, then presiding herein, requesting that he stop the
continuing criminal actions of the 230 Defendants in this case.
The next day, on January 6, 2005, Keyter filed an *ex parte* Motion
for Temporary Restraining Order, requesting that Judge Bryan
restrain Keyter's ex-wife from leaving the country for the reason
that she would be a necessary witness in the case.  On January 7,
2005, Judge Bryan responded to Keyter's request in the Complaint
for a three-judge panel from outside of the State of Washington
by referring the entire case to Chief Judge Richard Lasnik for
reassignment.

On March 7, 2005, Keyter filed a Motion to Disqualify Judge
R.J. Bryan for his failure to address and correct the alleged
ongoing crimes of the Defendants against Keyter.

On March 8, 2005, Chief Judge Lasnik received a letter from
Keyter urging Judge Lasnik to address and correct the alleged
ongoing crimes of the Defendants against Keyter and also seeking
reassignment of the case to a three-judge panel from outside of
the State of Washington, as originally requested in the
Complaint.

Meanwhile, Chief Judge Lasnik had sought the assistance of

the Chief Judge of the Ninth Circuit in obtaining a judge to preside over the case from outside of the State of Washington. On March 7, 2005, Chief Judge of the Ninth Circuit Mary Schroeder designated Charles C. Lovell, the undersigned Senior United States District Judge from the District of Montana, to perform the duties of United States District Judge temporarily for the Western District of Washington for the specific case *Anthony P. Keyter v. Gary Locke, et al.*, Case No. C04-5867.  On March 10, 2005, by Minute Order, the Clerk of Court entered an order reassigning the *Keyter v. Locke, et al*, case to me.

On March 21, 2005, Keyter sent five letters, one to each defense counsel, exhorting each of the defendants to investigate and prosecute the crimes allegedly committed against Keyter by his ex-wife, her attorney, and the court system defendants.  On March 22, 2005, I issued an order setting the case for a status conference before me, sitting in the United States Courthouse for the Western District of Washington, Tacoma Division, on April 15, 2005.  During that hearing, I outlined the parties' respective obligations and responsibilities, and I instructed Keyter not to send any more prohibited *ex parte* communications to the Court. Keyter questioned the Court's authority in this regard, and he seemed to assert that he was entitled to send private

8

communications to me that would have the effect of requiring me to have arrested any individual that Keyter thought was committing criminal offenses (particularly, of course, crimes against Keyter).  I also suggested that Keyter secure counsel.

On May 3, 2005, Keyter filed a "Motion to Disqualify U.S. District Court Judge C.C. Lovell" because I am "now a party to the case," and for acute prejudice against Plaintiff, sanctioning ongoing crimes against Plaintiff, and failure to perform peremptory judicial functions under the criminal code.  On the same day, May 3, 2005, Keyter filed a Notice of Joinder of Government Officers, wherein Keyter purports to add 51 defendants to the case pursuant to Fed. R. Civ. P. 19(a), including the undersigned Judge Lovell, Judge Bryan, and Chief Judge Lasnik, and all of the Justices of the Supreme Court of the State of Washington.  The reason given by Keyter for the Notice of Joinder is that each of the additional defendants has joined the conspiracy to commit crimes against Keyter and obstruct justice and otherwise cause harm against Keyter.  A copy of this Notice is attached hereto, marked Exhibit A, and by reference incorporated herein.

MOTION TO DISQUALIFY &

9

<u>NOTICE OF JOINDER OF GOVERNMENT OFFICERS</u>

Keyter brings his "Motion to Disqualify U.S. District Court Judge C.C. Lovell" pursuant to 28 U.S.C. § 455.  Keyter bases the motion upon (1) an alleged showing by the undersigned district judge of prejudice against Plaintiff and partiality in favor of Defendants, (2) an alleged protection of Defendants by the undersigned district judge for felonies they have committed against Keyter, constituting a sanctioning of their crimes and obstruction of justice, and (3) failure by the undersigned to perform peremptory judicial functions under 18 U.S.C. § 4 (Misprision of felony), 18 U.S.C. § 1505 (Obstruction of proceedings before departments, agencies, and committees), 18 U.S.C. § 3041 (Power of courts and magistrates), 28 U.S.C. § 535(b)(1) (Investigations of crimes involving Government officers and employees; limitations), and Rule 4 of Criminal Procedure (Arrest Warrant or Summons on a Complaint).

The first alleged basis of disqualification–prejudice against Plaintiff and favoritism towards Defendants–is actually specifically addressed by 28 U.S.C. § 144, which provides that

> [w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no

> further therein, but another judge shall be assigned to hearing such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed no less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time.  A party may file only one such affidavit in any case.  It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144 (2001 & Cum. Supp. April 2004).  Such a motion to disqualify is properly denied when no sufficient affidavit has been filed by a party stating facts showing bias against the moving party as required by section 144.  *See Davis v. Fendler*, 650 F.2d 1154, 1163 (9th Cir. 1980).  Not only has Plaintiff failed to file a sufficient affidavit in support of the motion to disqualify, Plaintiff has failed to file any affidavit at all.

The motion to disqualify makes no allegations of prejudice other than simple conclusions or opinions.  These are insufficient because only facts that are sufficiently definite and particular to convince a reasonable person that bias exists will support a section 144 allegation.  *See United States v. 292,888.04 in U.S. Currency*, 54 F.3d 564, 567 (9th Cir. 1995); *see also, United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993).

Furthermore, I must review these allegations because the judge whose prejudice or bias is in issue is charged with the duty to pass on the sufficiency of the affidavit.  *United States v. Azhocar*, 581 F.2d 735, 738 (9th Cir. 1978), *cert. denied*, 440 U.S. 907 (1979).  I find no sufficient affidavit in support of Plaintiff's allegation of bias or prejudice, and Plaintiff has failed his obligation to state particular facts that would convince a reasonable person that bias exists.

Keyter's second two bases for disqualification under 28 U.S.C. § 455 (*i.e.*, sanctioning crimes, and obstructing justice and failing to perform legal obligations under criminal statutes), fall within the ambit of 28 U.S.C. § 455, which provides that

> [a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

28 U.S.C. § 455(a) (2001 & Cum. Supp. April 2004).  The standard for recusal is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned."  *United States v. Studley*, 783 F.2d 934, 939 (th Cir. 1986) (quotation omitted).  Except in unusual cases, the alleged bias must stem from an "extrajudicial source."  *Liteky v. United States*, 510 U.S. 540, 554-56 (1994).  "Judicial

12

rulings alone almost never constitute valid basis for a bias or partiality motion." *Id.* "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."

I have reviewed my prior order dated March 22, 2005, setting the status conference, and I have also reviewed the transcript of proceedings of the status conference on April 15, 2005.  I find no evidence of "deep-seated favoritism or antagonism." Statements I may have made concerning the rules of procedure applicable to *pro se* litigants and the law as it applies to Keyter's Complaint cannot reasonably be used to question my impartiality in this case.  *See Liteky v. United States*, 510 U.S. at 554 (holding that extrajudicial source doctrine applies to 28 U.S.C. § 455 such that opinions formed by a judge during his consideration of a case cannot constitute a basis for a bias or partiality motion).

Nor may a party create a basis for recusal simply by naming a federal judge as a defendant.  *See United States v. Studley*, 783 F.2d 934, 940 (9th Cir. 1986) ("A judge is not disqualified

13

by a litigant's suit or threatened suit against him.").

Accordingly, I find that Keyter's Motion to Disqualify U.S. District Court Judge C.C. Lovell is without merit.

<u>NOTICE OF JOINDER</u>

The Notice of Joinder of Government Officers filed by Keyter on May 3, 2005, seeks to add 51 government officers, including the undersigned senior district judge, pursuant to Rule 19(a), Fed. R. Civ. P.  Rule 19 provides for compulsory joinder of parties by a court, and therefore it is not the applicable rule of civil procedure for the result sought by Keyter.  It is simply not possible to add defendants to the case by filing a "Notice of Joinder."  Rule 15, Fed. R. Civ. P., governs Keyter's right to add defendants to the case.  Whether framed as a Rule 19 compulsory joinder or even treated as a Rule 15 motion to amend, however, the relief is dependent on court action.  This Court would be inclined to convert the Notice of Joinder to a Motion to Amend Complaint were it not for the fact that Keyter is now attempting to add as new defendants those judicial officers who have previously denied him relief; such a litigation tactic is an abuse of the litigation process, and it is not a valid basis for an amendment of the complaint.  Here such motion to amend the complaint would be denied for futility, as becomes evident below.

<u>MOTIONS TO DISMISS</u>

There are numerous jurisdictional problems posed by Keyter's Complaint.  First, the statutory provisions cited by the Complaint are federal criminal statutes.  As Judge Sullivan correctly stated in his decision on August 6, 2004, private citizens are not permitted to enforce criminal statutes or prosecute crime.  *See Keyter v. Bush*, No. 03-2496, *slip op.* at 6-7 (D.D.C. Aug. 6, 2004) (*citing Rockefeller v. U.S. Court of Appeals Office for Tenth Circuit,* 248 F. Supp. 2d 17, 22 (D.D.C. 2003) ("the plaintiff is precluded from asserting any claims pursuant to 18 U.S.C. § 242 . . . because, as criminal statutes, they do not convey a private right of action."); *see also* 28 U.S.C. § 547(1) (stating that the United States Attorney "shall prosecute . . . all offenses against the United States. . . ."). Thus properly informed of the law, Keyter nevertheless disregarded Judge Sullivan's legal instruction and filed the instant Complaint, relying once again on the same criminal statutes that were found to be unavailable and that failed to state a claim upon which relief could be granted against President Bush in Keyter's prior federal case.  Keyter persists in his unreasonable belief that he has the right to sue any individual whom Keyter believes has violated a federal criminal

15

statute.

Not only is there no private right of action in the criminal
law, the very subject matter of Keyter's Complaint is very
doubtful: it has long been settled that, as courts of limited
jurisdiction, federal courts do not have jurisdiction over
domestic relations cases (*e.g.,* divorce, custody of minors,
visitation, *etc.*).  *See* In re Burrus*, 136 U.S. 580, 593-94
(1890); Csibi v. Fustos*, 670 F.2d 134, 136-37 (9th Cir. 1982);
*Tree Top v. Smith*, 577 F.2d 519, 521 (9th Cir. 1978).  As stated
by the U.S. Supreme Court in 1890, "[t]he whole subject of the
domestic relations of husband and wife, parent and child, belongs
to the laws of the states, and not to the laws of the United
States." *Burrus*, 136 U.S. at 593-94.  A case primarily involving
domestic relations is simply not a case over which a federal
court ought to take jurisdiction, and the only way that this
Court could possibly decide whether or not Keyter's share of the
marital estate was unfairly, illegally, or criminally taken from
him would be for this Court to re-adjudicate the merits of the
property settlement in the dissolution of his marriage.  To do so
would violate the fundamental jurisdictional rule that domestic
relations issues and cases are reserved to the jurisdiction of
the states.

Here then, we have a case that rests on no provision of the Constitution, laws, or treaties of the United States and that introduces a subject matter over which a federal court ought not take jurisdiction.

There is yet another jurisdictional impediment in this case, and this is the one that brings the jurisdictional edifice tumbling down. The *Rooker-Feldman* doctrine is a legal concept that excludes from federal subject matter jurisdiction those cases that seek to obtain federal district court review over state court decisions. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). Here, Keyter seeks to obtain a federal district court review of the property division in his state court marital dissolution case. Such review would violate the *Rooker-Feldman* doctrine because, for example, I could not possibly determine whether certain of the Defendants (Judge Van Deren, for example) participated in a conspiracy to deprive Keyter of his fair portion of the marital estate without first determining whether the marital estate was properly divided in the first instance. The state court issues are inextricably intertwined with the claims that Keyter desires to advance in federal court.

17

I recognize that Keyter does not explicitly seek review of the state court decision *eo nominee*.  He is content to simply assert that the property division was wrong, unfair, immoral, in violation of his rights, and illegal and that I should start arresting his enemies accordingly.  However, I am not in a position to take him at his word without hearing and without evidence, and were I to accept this case for adjudication on the merits, I would have to review all the evidence that was submitted at trial in the marital dissolution action to determine whether the property division was incorrect.  This I cannot do because I lack jurisdiction over the matter.

As already pointed out to Keyter in August 2004, 28 U.S.C. § 547(a) provides that the United States Attorney shall prosecute all offenses against the United States—not against Anthony P. Keyter.  Neither does Keyter have any right to *demand* that the sovereign prosecute *anyone* criminally.  *See Gini v. Las Vegas Metro. Police Dept.*, 40 F.3d 1041, 1045 (9th Cir. 1994); *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985).  *See also, DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 196 (1989) (no affirmative right to governmental aid under the Due Process Clause).

Therefore, because there is no valid federal law from which

18

Keyter's Complaint can derive its jurisdiction, because the subject matter is inappropriate for a federal district court, and because a state court litigant is not entitled to obtain federal district court review of a state court's decision, I find that the Complaint fails to state a claim and that I lack subject matter jurisdiction over Keyter's Complaint.

As counsel for the Defendants argue, many of them, perhaps all of them, are entitled to some form of immunity that shields them from this suit. Judge Marywave Van Deren, for example, is absolutely immune from this prosecution. *See Pierson v. Ray*, 386 U.S. 547, 553-54 (1967). Likewise, prosecutors Horne, Adams, and Costello are absolutely immune from prosecution. *See Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). However, I do not believe it necessary or appropriate to methodically work through a list of 230 government officials to categorize precisely each defendant's potential immunity from prosecution in a failed cause over which I have no subject matter jurisdiction. There is no need to reach the claims against the individual Defendants in this fashion.

<u>CONCLUSION</u>

After carefully considering the Complaint and the briefs of the parties, it is reasonably clear to me that the allegations of

19

the Complaint are defective, that the Defendants all possess some form of immunity from suit, and that this Court lacks subject matter jurisdiction to entertain Plaintiff's Complaint. Recognizing the distinction between a defective claim and a defective statement of a good claim, the Court finds that this is the former.  As such it cannot be aided or cured by amendment or further pleading.  All motions to dismiss shall be granted and the Complaint dismissed with prejudice.

I also find that this Complaint is frivolous and its prosecution by Keyter is an abuse of our court system and the Defendants herein named and sought to be named.  As such, Plaintiff should be ordered to file no further claims in this court against these Defendants or any of them on any claims included in this case.

Plaintiff's claim, reduced to its bare bones, as stated by him, is that he walked into a trial in state court with considerable property and a comfortable income stream but came out the other side without the property and with reduced income. Whether he has a remedy or not, that remedy does not lie in this Court in this case against these Defendants.

Accordingly,

IT IS HEREBY ORDERED that Plaintiff's Motion to Disqualify

Judge is DENIED.

IT IS FURTHER ORDERED that all motions to dismiss are GRANTED.  The Complaint is DISMISSED with prejudice for failure to state a claim and for lack of subject matter jurisdiction, and all relief is denied to Plaintiff.

IT IS FURTHER ORDERED that Plaintiff's Notice of Joinder of Government Officers is STRICKEN.

IT IS FURTHER ORDERED that Plaintiff Anthony P. Keyter is prohibited from filing in this Court against any of the 230 named Defendants or the 51 proposed additional defendants any further claim arising from the subject matter of this case.  Any future filing that violates this prohibition will be subject to summary dismissal by the court and may subject Keyter to a citation for contempt of court.

Let judgment enter.

The Clerk is directed forthwith to notify the parties of entry of this order.

Done and dated this <u>20th</u> day of May, 2005.

/s/CHARLES C. LOVELL
CHARLES C. LOVELL
Senior United States District Judge

21